UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY BLIXSETH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES COAST GUARD,<br><br>Defendant. | Civil Action No. 19-2297 (JEB) |

## MEMORANDUM OPINION

Plaintiff Timothy Blixseth believes himself the victim of high-level government corruption. In the latest of his myriad Freedom of Information Act suits, he accuses the U.S. Coast Guard of failing to produce documents principally related to a 2010 stop of his yacht, Piano Bar, near San Pedro, California. The Coast Guard has produced only three unredacted records and avers that its search has otherwise come up empty. Although Blixseth believes that the search should have been more comprehensive, the Court concludes that the Coast Guard has acted above and beyond what is typically required. Its Motion for Summary Judgment will consequently be granted.

### I. Background

According to Plaintiff, he submitted a FOIA request to the Coast Guard on April 17, 2018, which sought the following records:

1. All documents from the period of January 1, 2010 through December 31, 2010 that refer or relate to Blixseth, Piano Bar, or Yellowstone Aviation & Marine; and

2. All emails from any and all of former U.S. [Coast Guard] Commandant Robert J. Papp, Jr.'s email accounts from the period of May 25, 2010 through December 31, 2010, referencing:
a. Piano Bar b. Yellowstone c. Yellowstone Aviation & Marine d. Blixseth.

1

ECF No. 1 (Complaint), ¶ 9. He alleges that "[t]he records relate to Coast Guard actions taken against Plaintiff, as part of a coordinated and corrupt effort by high-level Department of Justice officials, along with the Coast Guard and other agencies, to intimidate Plaintiff from further pursuing his legal rights to continue challenging a bankruptcy reorganization plan in Montana." Id., ¶ 2. The Court notes that such conspiratorial allegations are consistent with those raised in other suits here. See, e.g., Shaw v. DOJ, No. 18-593, ECF No. 32-1 (Declaration of Timothy Blixseth), ¶ 22 (alleging that his adversaries "enlisted friends in the highest levels of the Government to intimidate [him] as well as to cause [him] financial harm").

In October 2018, the Coast Guard responded that it had performed a comprehensive search without locating any responsive documents. Id., ¶ 12. In appealing this result administratively, Plaintiff's letter explained:

> In 2010, Mr. Blixseth's yacht, Piano Bar, was intercepted by the Coast Guard. Under its own policies, the Coast Guard is required to create and maintain all investigative files for any such activities, and as such, there must be responsive investigative records maintained by the Coast Guard in response to this Request. Moreover, the Coast Guard failed to search the records of several Coast Guard components, including but not limited to the Office of Commercial Vessel Compliance . . . .

Id., ¶ 13.

After receiving no response, Blixseth filed this action. The Coast Guard, in turn, renewed its search and located one document, which it produced to him in full. (Two other documents ultimately delivered to him are discussed in Section III.B, *infra*.) It now moves to dismiss or for summary judgment, contending that its search was sufficient; Plaintiff both opposes such Motion and moves for discovery on the mechanics of the search.

## II. Legal Standard

Given the importance of the affidavits submitted here, the Court believes that the appropriate standard is the one related to summary judgment. Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)).

FOIA cases typically and appropriately are decided on motions for summary judgment. Id.; Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record []or by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption

3

of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III. Analysis

Although many FOIA cases turn on whether the Government's withholdings were proper, the dispute here is much narrower: it focuses solely on the adequacy of the Coast Guard's search for documents. "An agency fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. A search-adequacy inquiry includes consideration of facial validity and any specific deficiencies in the scope of the search. See Huntington v. U.S. Dep't of Commerce, 234 F. Supp. 3d 94, 103 (D.D.C. 2017). The Court, accordingly, will separately evaluate these issues.

### A. Facial Validity

The Government here submitted the Declaration of Jesse L. Houck, the Deputy Office Chief for the Coast Guard Judge Advocate General's Office of Claims and Litigation. See ECF No. 11-1 & ¶ 1. Houck explained that "[t]he Coast Guard does not have a centralized document management system that it can search when it receives a FOIA request. Rather, a FOIA

4

Contractor from [its Management Programs and Policy Division] evaluates the apparent subject matter of the request, and then sends it to the Coast Guard unit(s) or office(s) most likely to have responsive records for additional processing." Id., ¶ 4. Those units or offices then conduct their own searches, which include contacting employees of that unit or office and frequently performing a computer key-word search. Id.

In this case, the Coast Guard conducted multiple exhaustive searches. To begin, the FOIA Contractor, Jonathan Griffie, forwarded the request to the Coast Guard's Office of Investigations and Casualty Analysis (CG-INV), which "leads the Coast Guard's investigation program to promote marine safety, protect the maritime environment and to prevent future maritime accidents." Id., ¶ 6 (footnote omitted). The FOIA Coordinator for CG-INV received the request and determined that her office would not have any responsive records, but she forwarded it on to the Office of the Commandant. Id., ¶ 7. The search there was supervised by the Assistant Commandant for Command, Control, Communications, Computers, and Information (C-6). Id., ¶ 8. After determining that Piano Bar was the name of the vessel — a fact Plaintiff had not divulged — the Executive Secretary to the Assistant Commandant "looked for responsive records on a Coast Guard-wide intranet site known as the CG Portal, . . . [which] is comprised of unique sites and pages that belong to each Coast Guard unit and office." Id., ¶ 10. His search using the terms Plaintiff provided yielded no success, as did a search of the paper files located in C-6's offices and C-6's networked shared drive. Id., ¶¶ 10–11.

This was followed by a search of Coast Guard Cyber Command, the "backbone of the Coast Guard's email system . . . [and] the only place the Coast Guard stores individual email accounts." Id., ¶ 13. The search, however, was unlikely to find any of Commandant Papp's emails, since he had "retired from active duty on May 31, 2014, [and p]er Coast Guard IT policy,

5

. . . [225] days later, his account was deleted." Id., ¶ 15. The Executive Secretary next contacted the Chief Historian in the Coast Guard Historian's Office for copies of Papp's data, but he was informed that the office does not "keep those types of records." Id., ¶ 16.

Not done yet, Houck then worked with the Executive Secretary to conduct an additional search, which could be more targeted since Plaintiff's appeal letter indicated that "he was seeking documentation relating to an alleged 'interception' of his vessel by the Coast Guard in 2010." Id., ¶ 18. This led the searchers to the Marine Information for Safety and Law Enforcement (MISLE) database, which covers all "operational activities such as vessel boardings, . . . law enforcement actions, and search and rescue operations." Id., ¶ 19. Plaintiff's proposed terms yielded one responsive record, which was produced. Id., ¶ 20. Houck also supervised a record search in the National Vessel Documentation Center and the Office of Commercial Vessel Compliance, both to no avail. Id., ¶¶ 21–22. In sum, Houck coordinated with other very experienced Coast Guard officers and "searched, or directed searches, for records responsive to the FOIA Request in every Coast Guard unit and office that we collectively conceived would likely have responsive materials. . . . There are no other Coast Guard units or offices likely to possess any records responsive to this FOIA Request." Id., ¶ 23.

On its face, the Houck Declaration certainly constitutes a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The affidavit likewise contains the proverbial "magic words." The "magic" statement in an agency's testimony is an "assertion that [the Department] searched all locations likely to contain responsive documents." Bartko v. DOJ, 167 F. Supp. 3d 55, 64 (D.D.C. 2016). As Houck's Declaration unequivocally attests that it searched

all files reasonably likely to contain responsive information, the search is facially adequate.

B. Specific Deficiencies

Despite the impressive efforts detailed in the Houck Declaration, Plaintiff believes that the Coast Guard has not satisfied its FOIA responsibilities. He raises multiple arguments, which Houck dispatches in a Supplemental Declaration. See ECF No. 15-1. First, Plaintiff points out that the Coast Guard did not "identify the date range for its search" that recovered the single document. See ECF No. 13 (Opp.) at 7, but Houck clarifies that it was the 2010 range Blixseth sought. See Houck Supp. Decl., ¶ 4.

Second, according to Blixseth, "Defendant never even bothered to search for . . . records in the CG-INV Office," which "on its own demonstrates the inadequacy of Defendant's search in this case." Opp. at 7–8. This, Houck explains, is because CG-INV oversees investigations into "reportable marine casualties (*e.g.* vessel grounding, loss of propulsion, loss of life," none of which was involved here. See Houck Supp. Decl., ¶ 5. Plaintiff's third point also principally relates to searches of CG-INV officers' records, which, as just mentioned, would not have been fruitful. See Opp. at 8.

Fourth, Blixseth asserts that "Defendant's declaration does not explain what information is provided on the CG Portal." Id. (citation omitted). The Court is not sure why a more detailed explanation beyond the discussion above is necessary on this point. See, e.g., Coffey v. Bureau of Land Mgmt., 249 F. Supp. 3d 488, 501 (D.D.C. 2017) ("'[F]ailure . . . to identify' the database and software involved in its search . . . does not preclude summary judgment . . . ."); CREW v. Nat'l Indian Gaming Comm'n, 467 F. Supp. 2d 40, 50 (D.D.C. 2006) (rejecting argument that agencies "must reveal details about the search, including 'information regarding the actual databases or indices searched'").

7

Fifth, Plaintiff laments that "there is no evidence that Defendant searched the hard copy records or other sources in the Coast Guard's Office of Maritime Law Enforcement . . . or the Coast Guard's National Vessel Documentation Center." Opp. at 9. Yet, the former "does not maintain paper records of Coast Guard law enforcement activities," and the latter only "maintains vessel documentation records for vessel[s] flagged in the United States." Houck Supp. Decl., ¶¶ 7–8. Piano Bar is registered in the Cayman Islands. Id., ¶ 8.

Sixth, Blixseth contends that the Coast Guard should also have used as a search term the "VIN number or other current identifiers" for the yacht. See Opp. at 9. This information was readily available to Plaintiff as the yacht's owner, and he could have requested such search but did not.

Blixseth's seventh point relates to when the Government learned a certain fact, but it does not allege any further search that should have been done, and his eighth argues that "Defendant provides no explanation for why there are no investigative records." Id. at 10. The Government's responsibility under FOIA is to produce records, not explanations or surmises about their absence.

Houck nonetheless pursued additional avenues once Plaintiff had informed the Government that he sought records regarding Piano Bar's interception and that it occurred near San Pedro, California. He contacted the Lieutenant Commanders in charge of vehicle detentions in both that area and in San Diego and directed further searches, which resulted in the retrieval of a 2012 Notice of Violation and a 2012 Statement of Compliance for Piano Bar. Even though their dates placed them outside Plaintiff's search parameters, the two records were forwarded on to him. See Houck Supp. Decl., ¶¶ 10–13.

Plaintiff's final pleading continues to seek discovery and to complain that records of the

purported 2010 detention must exist. See ECF No. 16 (Reply) at 3–5. "To begin with, discovery is generally inappropriate in a FOIA case. More important, Plaintiff here has offered no valid reason to question the good faith or efficacy of [the Coast Guard's] search." Freedom Watch, Inc. v. U.S. Dep't of State, 77 F. Supp. 3d 177, 183 (D.D.C. 2015) (internal citation, internal quotation marks, and citation omitted). Here, that search has been impressive in its comprehensiveness, and the agency should be commended for such diligent efforts in response to Plaintiff's queries. No more is required under FOIA.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Coast Guard's Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

/s/ James E. Boasberg  
JAMES E. BOASBERG  
United States District Judge

Date: December 16, 2019